

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

ENTERED
10/06/2010

IN RE:                          §
CRAIG WARREN FERNANDEZ, I        §          CASE NO: 07-35173-H4-13
    Debtor                       §

## MEMORANDUM OPINION ON: (1) CHAPTER 13 FEE APPLICATION FOR REESE BAKER; (2) EMERGENCY MOTION OF BAKER & ASSOCIATES TO COMPEL CHAPTER 13 TRUSTEE TO PAY APPROVED FEES TO BAKER& ASSOCIATES AND TO REVOKE PAYMENT TO HOME MORTGAGE LENDER; AND (3) TRUSTEE'S MOTION TO VACATE ORDERS GRANTING CHAPTER 13 FEE APPLICATIONS
[Docket Nos. 170, 171 & 175]

## I. INTRODUCTION

On December 8 and 17, 2009, this Court held a hearing on the following matters: (1) Chapter 13 Fee Application for Reese Baker [Docket No. 170]; (2) Emergency Motion of Baker & Associates to Compel Chapter 13 Trustee to Pay Approved Fees to Baker & Associates and to Revoke Payment to Home Mortgage Lender [Docket No. 171]; and (3) Trustee's Motion to Vacate Orders Granting Chapter 13 Fee Applications [Docket No. 175].   The Court heard testimony from three witnesses: Craig Warren Fernandez, I (the Debtor); Reese Baker, counsel of record for the Debtor in this Chapter 13 case (Baker); and Mitchell Buchman, counsel of record for the home lender (Buchman)—all of whom the Court finds to be credible.   Fourteen exhibits were admitted into evidence—namely, Baker's Exhibits 1–4 and America's Servicing Company's Exhibits 1–10, with Exhibit 8 being admitted for demonstrative purposes only.

Based upon the entire record, the Court now makes findings of fact and conclusions of law pursuant to Federal Bankruptcy Rule 7052.[1]   To the extent that any finding of fact is construed as a conclusion of law, it is adopted as such; and to the extent any conclusion of law is

---

[1] Unless otherwise noted, all section references refer to 11 U.S.C. and all references to the "Code" or the "Bankruptcy Code" refer to the United States Bankruptcy Code.   References to a "Rule" or "Bankruptcy Rule" refer to the Federal Rules of Bankruptcy Procedure.

construed as a finding of fact, it is also adopted as such.  This Court reserves the right to make

additional findings and conclusions as it deems appropriate or as any party may request.

## II. FINDINGS OF FACT

### A. Present Posture of this Chapter 13 Case

1. On August 4, 2007, Craig Warren Fernandez, I (the Debtor) filed a voluntary Chapter 13 petition. [Docket No. 1].

2. On September 11, 2007, the Debtor filed a uniform Chapter 13 plan and motion for valuation of collateral. [Docket No. 18].  This Court entered an order confirming the Chapter 13 plan and valuing the collateral on February 4, 2008. [Docket No. 52].

3. However, upon consideration of a motion filed by America's Servicing Company (ASC)[2] and the evidence presented at a hearing on the motion, the Court vacated its order of confirmation on March 10, 2008. [Docket No. 62].

4. Four months later, on July 17, 2008, the Debtor filed an amended uniform Chapter 13 plan and motion for valuation of collateral. [Docket No. 81].  The Debtor never obtained confirmation of this amended plan, or any other plan, and the Court entered an order of dismissal on October 22, 2009 (the Dismissal Date). [Docket No. 167].

### B. Adversary Proceeding Seeking Return of the Debtor's Homestead

5. On March 7, 2008, the Debtor filed an adversary proceeding (Adv. No. 08-03068) against ASC requesting this Court to: (a) set aside the wrongful foreclosure of the Debtor's homestead and turnover the property to the Debtor; (b) issue an order specifying that all

---

[2] ASC is the servicing agent for Property Asset Management, Inc. its assigns and/or successors in interest.  Wells Fargo Bank, N.A. successor by merger to Wells Fargo Home Mortgage, Inc. its assigns and/or successors in interest (Wells Fargo) was the original home lender, and is referenced as such in several of the pleadings discussed in this Memorandum Opinion.  However, ASC, as the servicing agent, is actually doing business as Wells Fargo.  In fact, ASC is the named creditor which filed a proof of claim in this case and, thus, is the named party objecting to any proposed plans or subsequent requests for payment of fees by the Debtor's counsel.

2

right, title, interest, and possession in the property is transferred back to the Debtor; (c) issue an order otherwise quieting title to the property and removing any cloud placed on the title; (d) reinstate the loan documents on the property; and (e) award attorney's fees to the Debtor (the Adversary Proceeding). [Docket No. 61].

6. On December 29, 2008, the Court entered an agreed final judgment between the Debtor and ASC dismissing the Adversary Proceeding (the Agreed Judgment). [Docket No. 118]. The Agreed Judgment rescinded the foreclosure sale of the Debtor's homestead—which had taken place on August 1, 2006, a year prior to the filing of the Debtor's Chapter 13 petition—and, consequently, revived the promissory note[3] and deed of trust executed in favor of the home lender by the Debtor and his wife. In addition to specifying parameters regarding the amount owed on the debt and the ongoing monthly payments,[4] the Agreed Judgment expressly set forth that "the Trustee is authorized to immediately disburse all on-going mortgage payments accruing from the petition date pursuant to the plan to Wells Fargo Bank, N.A. d/b/a America's Servicing Company pursuant to the Chapter 13 Trustee Procedures for Administration of Home Mortgage Payments in the Southern District of Texas, Houston Division." [Docket No. 118, p. 2–3]. Additionally, the Debtor was required to "file an amended plan within 40 days after

---

[3] The Debtor executed an adjustable rate note on October 28, 2005 promising to pay $256,000.00 to his home lender (the Adjustable Rate Note). The LIBOR six-month index is the selected index value used to determine the variable interest rate contemplated under the note. [ASC's Ex. No. 9].

[4] Specifically, the Agreed Judgment provided that "the regular monthly mortgage payment due Wells Fargo Bank, N.A. d/b/a America's Servicing Company commencing December 1, 2008 is $3,253.43 plus 1/12 forced place wind insurance escrow or 1/12 wind insurance escrow for a policy obtained by Debtor and forwarded to Wells Fargo Bank, N.A. d/b/a America's Servicing Company. This amount consists of $2,283.79 principal and interest as of December, 2008, $899.39 for 1/12th tax escrow, $70.25 for 1/12th hazard insurance escrow, plus wind insurance. Debtor shall pay ongoing homeowners assessment fees, if any, directly, without escrow. Regular monthly payments shall continue at this amount until otherwise adjusted (i) pursuant to the adjustable interest rate in the note or (ii) to maintain adequate escrow as notified by Wells Fargo Bank, N.A. d/b/a America's Servicing Company subject to this Court's procedure on adjustment of on-going payments or (iii) to account for any proper adjustments arising after note reinstatement not accounted for in this order." [Docket No. 118, p. 2].

3

this order is entered.   The amended plan shall provide for monthly mortgage payments to the Chapter 13 Trustee in a sufficient amount to cover each on-going monthly mortgage payment, plus equal monthly payments over the remaining term of the plan for the mortgage arrears." [Docket No. 118, p. 3].   The Agreed Judgment was signed "Agreed at to Form and Substance" by counsel for ASC, counsel for the Debtor, the Debtor, and the Debtor's wife. [Docket No. 118, p. 4].   As already noted, however, no plan was ever confirmed.

## C.  Baker's Requests for Fees and Expenses

7.  Prior to dismissal of this Chapter 13 case, Baker had filed the following fee applications,[5] all of which were approved by this Court, as indicated below, for a total amount of $21,651.06:[6]

| Date of Fee Application | Docket No. of Fee Application | Amount of Fees/Expenses Requested | Result Granted by the Court |
|---|---|---|---|
| 2/28/2008 | 60 | Fees- $7,324.00 Expenses- $435.75 | Application Approved [Docket No. 72] |
| 7/29/2008 | 91 | Fees- $4,434.00 Expenses- $11.52 | Application Approved [Docket No. 93] |
| 9/26/2008 | 99 | Fees- $2,708.00 Expenses- $15.27 | Application Approved [Docket No. 105] |
| 1/28/2009 | 129 | Fees- $6,699.00 Expenses- $23.52 | Application Approved [Docket No. 138] |

8.  Out of the $21,651.06 of fees and expenses previously approved by this Court, Baker has received payments totaling $9,877.97 from the Chapter 13 Trustee. [Docket No. 186, p.

---

[5] The Court notes that none of the fee applications specify that Baker is seeking interim compensation. [Docket Nos. 60, 91, 99 & 129].

[6] Attorney's fees and expenses in the amount of $21,651.06 are unusually high for a Chapter 13 case.  Indeed, fees and expenses for a Chapter 13 case where the attorney is billing on an hourly basis are typically a fraction of this amount (attorneys in the Southern District of Texas also have the option of selecting a fixed fee of $3,085.00).  In the case at bar, however, the Debtor became embroiled in litigation with his mortgagor, and Baker therefore had to spend substantial time representing his client.  The amount of the fees and expenses underscores how costly litigation can be.  The Debtor has never objected to these particular fees and expenses because at the time that they were rendered, he wanted Baker to do everything possible under the law to save his homestead.

2].  Also, Baker received $3,400.00 from the Debtor through both pre- and post-petition

payments. [Docket Nos. 72 & 93].

9.  ASC (Wells Fargo), the Debtor's home lender, received $19,061.70 from the Chapter 13

Trustee in late October 2009, following entry of the order of dismissal, and $46,800.00 in

payments prior to dismissal,[7] for a total amount of $65,861.70 to date. [Docket No. 186,

p. 3].

10. In accordance with the deadline for filing a post-dismissal application for an

administrative expense—which was 20 days from the entry of the order of dismissal on

the docket,[8] Baker filed a Chapter 13 fee application on October 26, 2009 seeking

payment for $7,927.50 of fees and $50.53 of expenses, for a total amount of $7,978.03

(the Pending Fee Application). [Docket No. 170].  The Pending Fee Application covers

fees and expenses incurred between January 13, 2009 and October 23, 2009. [Docket No.

170-4].

11. Baker testified at the December 8, 2009 hearing that his fee agreement with the Debtor

allows him to seek payment directly from the Debtor after dismissal of the Debtor's

Chapter 13 case, and that he has not decided if he will do so if he is unable to recover his

fees from the Trustee. [Tape Recording, 12/8/2009 Hearing at 4:47:53 p.m.—4:48:22

p.m.].

12. The Debtor requested at this same hearing that the fees and expenses Baker seeks in the

---

[7] The $46,800.00 received by the home lender prior to dismissal of the Debtor's Chapter 13 case represents 24 months of $1,950.00 payments (one lump sum payment of $33,150 covering 17 months followed by 7 individual monthly payments). [Baker's Ex. No. 1].  The $1,950.00 payments equaled the monthly amount due to the home lender under the Debtor's original and amended proposed Chapter 13 plans. [Docket Nos. 18 & 81].

[8] The Order of Dismissal expressly sets forth that "[t]he deadline for filing an application for an administrative expense in this case is set at 20 days following entry of this Order." [Docket No. 167]; *see also In re Wilson*, No. 02-41399, 2003 WL 21501786, at *6 (Bankr. S.D. Tex. 2003) ("With respect to services rendered in Chapter 13 cases dismissed prior to confirmation, [d]ebtors' counsel shall file any fee application no later than 20 days after the date of entry of the order of dismissal.")

Pending Fee Application be reduced due to Baker's refusal to personally negotiate a loan modification with ASC on the Debtor's behalf. [Tape Recording, 12/8/2009 Hearing at 5:04:15 p.m.—5:08:29 p.m.]. Baker responded that he believed it was in the Debtor's best interest for the Debtor to discuss the terms of a loan modification directly with the home lender. He stated that in his experience, "clients have significantly higher success rates on obtaining loan modification agreements without lawyers involved." [Tape Recording, 12/8/2009 Hearing at 5:21:11 p.m.—5:21:56 p.m.]. He estimated that he could have incurred an additional $5,000.00 in fees and expenses attempting to negotiate a loan modification with Buchman that was agreeable to the Debtor, and he did not believe that was beneficial to the Debtor under the circumstances. [Tape Recording, 12/8/2009 Hearing at 5:21:56 p.m.—5:22:42 p.m.].

13. Baker testified at the December 8, 2009 hearing about the services he performed in this Chapter 13 case and the benefits he believes he provided to the Debtor—despite the case being dismissed pre-confirmation.[9] For example, Baker noted that he filed the Adversary Proceeding and revoked the foreclosure of the Debtor's homestead by entering into the Agreed Judgment with ASC. Baker also highlighted his action on behalf of the Debtor with regard to the second lien on the homestead—namely, obtaining an order from this Court determining that the second lien was an unsecured claim and requiring the second lienholder to return to the estate the money it had received from the Trustee.[10] [Tape

---

[9] As the Court has already noted, the Debtor obtained confirmation of a plan on February 4, 2008 [Docket No. 52], but the order confirming the plan was vacated on March 10, 2008 [Docket No. 62]. The Debtor filed an amended plan on July 17, 2008 [Docket No. 81], but the amended plan was never confirmed. The Debtor's case was dismissed on October 22, 2009, without a valid order of confirmation on file with the Court. [Docket No. 167]. Thus, the Court characterizes the Debtor's case as being dismissed pre-confirmation.

[10] Baker stated on the record that the second lienholder had, in fact, complied with the Court's order and returned all the funds it received from the Chapter 13 Trustee in this case. [Tape Recording, 12/8/2009 Hearing at 4:39:40 p.m.; 4:45:01 p.m.]. The Court notes, however, that Baker filed a certificate of non-compliance on March 13, 2009,

6

Recording, 12/8/2009 Hearing at 4:36:05 p.m.—4:40:12 p.m.]. Baker asserted that he was unable to achieve confirmation of an amended plan in compliance with the Agreed Judgment because the Debtor refused to accept any loan modification proposed by ASC. [Tape Recording, 12/8/2009 Hearing at 4:40:10 p.m.—4:42:10 p.m.; 5:00:39 p.m.—5:01:15 p.m.]. Baker later confirmed that, to date, the Debtor has not obtained a loan modification and that the Debtor's home will likely be foreclosed upon in the absence of such modification. [Tape Recording, 12/8/2009 Hearing at 4:54:11 p.m.—4:54:42 p.m.].

14. The Trustee maintains his position that Baker failed to provide any material benefit to the Debtor or his bankruptcy estate, as articulated by his counsel at the December 8 hearing. The Trustee's counsel argued that Baker should have ceased representation of the Debtor when the deadline for filing an amended plan had passed (*i.e.* 40 days beyond the date of the entry of the Agreed Judgment [Docket No. 118, p. 3]) and when Baker knew that the Debtor was uncooperative and unwilling to sign off on any proposed plan amendments. [Tape Recording, 12/8/2009 Hearing at 4:48:38 p.m.—4:49:33 p.m.].[11] Thus, it is the Trustee's position that Baker should not recover any fees and expenses for his additional undertakings in this case, for example stripping the second lien on the Debtor's home.[12]

---

notifying this Court that the second lienholder had failed to refund the funds and, thus, had not complied with the Court's order. [Docket No. 139]. Despite this inconsistency, the Court finds that Baker's testimony is correct (*i.e.* the second lienholder has refunded the $7,959.00 paid to it by the Trustee)—as reflected on the Trustee's financials [Baker's Ex. No. 1, pg. 3] and confirmed by the Trustee's attorney at the December 8 hearing [Tape Recording, 12/8/2009 Hearing at 5:34:19 p.m.—5:34:56 p.m.].

[11] Indeed, Baker admitted that he knew shortly after the time the Agreed Judgment was entered that the Debtor was not going to agree to any loan modification and, likewise, would not sign any proposed plan incorporating such a modification. [Tape Recording, 12/8/2009 Hearing at 4:48:54 p.m.—4:49:06 p.m.].

[12] The Court acknowledges that Baker filed the Debtor's First Amended Objection to Proof of Claim of Franklin Credit Management Corporation—seeking to have this second lienholder's claim deemed unsecured—on November 24, 2008, a month prior to when the Agreed Judgment was entered. [Docket No. 107]. Nevertheless, the Court agrees with the Trustee that Baker should have known that a plan would not likely be confirmed in this case by the time he prosecuted his objection to Franklin Credit Management Corporation's proof of claim, as the hearing regarding the objection was not held until February 9, 2009, the same day the Court entered an order stripping the

Even if such actions were appropriate, the Trustee's counsel refuted Baker's assertions that his further representation benefited the Debtor by asserting that: (a) the Debtor has not obtained a loan modification from the home lender; (b) the Court's order designating the second lienholder's claim as unsecured did not survive the dismissal of the Debtor's bankruptcy; (c) by requiring the second lienholder to refund the payments it had received from the Trustee, the order stripping the second lien actually harmed the Debtor by increasing the amount he owes the second lienholder following dismissal of the bankruptcy; and (d) even though the Debtor did recover his home pursuant to the Adversary Proceeding, it is unlikely that the Debtor will be able to keep his home under the current circumstances. [Tape Recording, 12/8/2009 Hearing at 4:54:11 p.m.—4:54:41 p.m.; 5:33:57 p.m.—5:35:46 p.m.].

**D. Baker's Motion to Revoke Payment to Home Lender and Compel Payment of his Fees**

15. On November 2, 2009, Baker filed an emergency motion seeking to compel the Chapter 13 Trustee to pay Baker & Associates' approved fees and seeking to revoke payment previously made to the home mortgage lender (Baker's Motion). [Docket No. 171]. Baker asserts that "Section 1326(a)(2) and 1326 (b) [sic] provide that payments made by the debtor to the chapter 13 trustee are to be used to pay administrative claims before funds are returned to the Debtor or paid to creditors." [Docket No. 171, ¶ 14]. Additionally, Baker testified that because—according to the Southern District of Texas Chapter 13 Home Mortgage Payment Procedures—the Trustee is only "authorized," rather than "required," to disburse contractual mortgage payments to a home lender prior to confirmation of a Chapter 13 plan, the home lender is not necessarily entitled to such

second lien. [Docket No. 134].

payments. [Tape Recording, 12/17/2009 Hearing at 9:27:15 a.m.—9:28:49 a.m.].  Thus, Baker requests an order from this Court requiring the Chapter 13 Trustee to retrieve the $19,061.00 payment to Wells Fargo and requiring payment of all allowed fees and expenses to Baker. [Docket No. 171, p. 3–4].

16. On December 7, 2009, ASC filed its second amended response to Baker's Motion. [Docket No. 183].  ASC asserts that: (a) Baker's fees do not have priority over payment of the ongoing post-petition monthly mortgage payment; (b) the Chapter 13 Trustee's disbursements of monthly mortgage payments to ASC was ordered by this Court;[13] (c) Baker should be estopped from seeking revocation of the monthly mortgage payments as an impermissible collateral attack on the Agreed Judgment; and (d) approval of Baker's Motion would circumvent the Local Bankruptcy Rules regarding the payment of ongoing monthly mortgage payments.

17. Also on December 7, 2009, the Trustee filed his amended response to Baker's Motion. [Docket No. 184].  The Trustee asserts that he properly paid claims in accordance with the Local Rules and applicable case law, and that the existing procedure is the most appropriate manner in which to distribute the Debtor's payments. [Docket No. 184, ¶ 4, 5 & 7].  According to the Trustee, if the Court adopted the position promulgated in Baker's Motion, there would be no finality to future disbursements made by a Chapter 13 trustee in such cases—specifically, because any time a debtor's counsel files a fee application,

---

[13] ASC's counsel testified at the December 17 hearing that the monthly amount of principal and interest due to ASC pursuant to the terms of the Adjustable Rate Note was $2,468.74 from September 2007 through May of 2008 and $2,283.79 from June 2008 through November 2008, at which point the contractual mortgage payment was amended as set forth above in the terms of the Agreed Judgment. [Tape Recording, 12/17/2009 Hearing at 11:41:05 p.m.—11:41:37 p.m.].  The contractual mortgage payment due to ASC remained $3,253.43, the amount specified in the Agreed Judgment [Docket No. 118, p. 2], until the Chapter 13 Trustee filed his notice of intent to disburse an adjusted mortgage amount, specifically $3,071.04, effective June 1, 2009 (the Trustee's Notice of Intent to Disburse Adjusted Mortgage). [Docket No. 157].  This remained the monthly contractual mortgage payment due to ASC until the Dismissal Date.

the mortgagee could lose its priority as to portions of its loan or be ordered to disgorge previous payments.   Further, a debtor could potentially make all payments under a Chapter 13 plan and still be significantly behind on the ongoing mortgage claim.   The Trustee also notes that Baker could have pursued other avenues in order to secure payment of his fees that did not involve circumventing the current priority scheme, including providing for his increasing fees in the Debtor's plan. [Docket No. 184, ¶ 7].

**E.  Trustee's Motion to Vacate Orders for Compensation**

18. On November 4, 2009, the Trustee filed his motion to vacate this Court's orders granting Baker's previous fee applications (the Trustee's Motion). [Docket No. 175].  Citing Rule 60 of the Federal Rules of Civil Procedure, the Trustee seeks to have the orders vacated so that Baker's fee requests may be re-examined in light of the final disposition of this case—particularly, that the Debtor's case was dismissed subsequent to this Court's approval of Baker's fees and without the Debtor obtaining confirmation of a Chapter 13 plan. [Docket No. 175, ¶ 3–4].  The Trustee asserts that Baker's fees should be reduced or denied in full because his services failed to provide any real benefit to the Debtor. [Docket No. 175, ¶ 7–8].

19. Baker filed his response to the Trustee's Motion on December 7, 2009, denying the allegations set forth above. [Docket No. 185].

### III. CONCLUSIONS OF LAW

**A. Jurisdiction and Venue**

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 1334(b) and 157(a).  This contested matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (O), and the general "catch-all" language of 28 U.S.C. § 157(b)(2).  *See In re Southmark*

*Corp.*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case."); *De Montaigu v. Ginther (In re Ginther Trusts)*, Adv. No. 06-3556, 2006 WL 3805670, at *19 (Bankr. S.D. Tex. Dec. 22, 2006) (holding that a matter may constitute a core proceeding under 28 U.S.C. § 157(b)(2) "even though the laundry list of core proceedings under § 157(b)(2) does not specifically name this particular circumstance"). Venue is proper pursuant to 28 U.S.C. § 1408(1).

**B. ASC shall retain all payments it received from the Chapter 13 Trustee.**

1) <u>The Bankruptcy Code does not grant priority to administrative claims, such as Baker's fees, when funds held by a Chapter 13 trustee[14] are distributed upon pre-confirmation dismissal of a Chapter 13 case.</u>

Baker's Motion asserts that "Section 1326(a)(2) and 1326 (b) [sic] provide that payments made by the debtor to the chapter 13 trustee are to be used to pay administrative claims before funds are returned to the Debtor or paid to creditors." [Finding of Fact No. 15]. This Court disagrees. First, Section 1326(b) is inapplicable to the pending dispute because no plan was ever confirmed in this Chapter 13 case. *See* 11 U.S.C. § 1326(b) ("Before or at the time of each payment to creditors *under the plan*, there shall be paid any unpaid claim of the kind specified in section 507(a)(2) . . . .") (emphasis added).

Second, the 2005 amendments to Section 1326(a)(2) specifically refute Baker's assertion. Prior to the passage of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005,

---

[14] Prior to confirmation of a Chapter 13 plan, the debtor is required to make payments to the Chapter 13 trustee equaling the amount proposed in the unconfirmed plan, which must be filed within 14 days of the filing of the petition pursuant to Rule 3015(b). Thus, for example, if a debtor files a Chapter 13 petition on June 1, then the proposed plan must be filed by no later than June 15, and the first payment that the Debtor must make to the trustee (in the amount set forth in the proposed plan) must be paid by no later than June 30. Then, the debtor must make pre-confirmation payments to the trustee each month thereafter until the plan is confirmed. Thus, by the time the proposed plan comes up for confirmation, the trustee should be holding funds in an amount of at least a few months' payments made by the debtor—less, of course, any adequate protection payments that the trustee has made to secured creditors pending the confirmation hearing.

Pub. L. 109-8, 119 Stat. 23 (BAPCPA), Section 1326(a)(2) provided that "[i]f a plan is not confirmed, the trustee shall return any such payment to the debtor, after deducting any unpaid claim allowed under section 503(b) of this title." Pub. L. 109-8, § 309(c)(2).  Courts interpreted this provision to promulgate the priority scheme contemplated in Baker's Motion. *E.g. In re Lampman*, 276 B.R. 182, 184 (Bankr. W.D. Tex. 2002) (noting that when a plan is not confirmed "the chapter 13 trustee is obligated to satisfy allowed administrative claims out of funds on hand before returning the remainder to the debtor"); *Clark v. Commercial State Bank*, No. MO-00-CA-140, 2001 WL 685529, at *7 (W.D. Tex. Apr. 16, 2001).  Thus, pre-BAPCPA, if a Chapter 13 case was dismissed prior to confirmation, the funds held by the trustee were distributed to all administrative claimants first, with the remaining funds being returned to the debtor. *In re Rodgers*, 239 B.R. 883, 888–89 (Bankr. E.D. Tex. 1999).  No funds were distributed to any creditors upon pre-confirmation dismissal.[15] *Id.* ("If [a Chapter 13 case] fails and the case is dismissed or converted, a secured creditor in this district generally receives no money despite the continued use of its collateral for perhaps several months in the pre-confirmation period.").

Section 1326(a)(2) was amended in 2005, however, to provide for payment to creditors when a Chapter 13 case is dismissed prior to confirmation.  Section 1326(a)(2) now states that, "[a] payment made under paragraph (1)(A)[16] shall be retained by the trustee until confirmation or denial of confirmation. . . . If a plan is not confirmed, the trustee shall return any such payments

---

[15] In this context, "creditors" refers to those entities or individuals who held a claim against the Debtor pre-petition—as opposed to administrative claimants, whose claims arise after the filing of the bankruptcy petition.

[16] Section 1326(a)(1) expressly provides that, "[u]nless the court orders otherwise, the debtor shall commence making payments not later than 30 days after the date of the filing of the plan or the order for relief, whichever is earlier, in the amount—(A) proposed by the plan to the trustee; (B) scheduled in a lease of personal property directly to the lessor for that portion of the obligation that becomes due after the order for relief; . . . and (C) that provides adequate protection directly to a creditor holding an allowed claim secured by personal property." In the case at bar, no payments have been made either by the Debtor or the Trustee to a lessor of personal property or a creditor holding a security interest in personal property.  Accordingly, only the undistributed funds paid pursuant to the proposed plan by the Debtor are being evaluated under Section 1326(a)(2).

not previously paid and not yet due and owing to creditors pursuant to paragraph (3) to the debtor, after deducting any unpaid claim allowed under section 503(b)." The reference to "paragraph 3" apparently relates to Section 1326(a)(3), which authorizes the court to "upon notice and a hearing, modify, increase, or reduce the payments required under this subsection pending confirmation of a plan." Read literally, Section 1326(a)(2) conditions the disbursement to creditors on whether the court has entered an order modifying payments otherwise required by Section 1326(a). *Perez v. Peake*, 373 B.R. 468, 486 (S.D. Tex. 2007).

Both commentators and courts have been left to question whether the cross-reference to "paragraph 3" in Section 1326(a)(2) is a mistake. *See* LUNDIN, CHAPTER 13 BANKRUPTCY § 404.1 at 402-2; David Gray Carlson, *Cars and Homes in Chapter 13 After the 2005 Amendments to the Bankruptcy Code*, 14 AM. BANKR. INST. L. REV. 301, 325–26 (2006); *Perez*, 373 B.R. at 486 ("[I]t is unclear what pre[-]confirmation payments may be disbursed by the trustee and not returned to the debtor if the plan is not confirmed."). In deciphering these provisions, some courts have concluded that the payments referenced in (a)(3) are synonymous with adequate protection payments. *E.g., In re Inyamah*, 378 B.R. 183, 185 (Bankr. S.D. Ohio 2007); *In re Sexton*, 397 B.R. 375, 378 (Bankr. M.D. Tenn. 2008); *Hampton v. Capital One Auto Fin.* (*In re Hampton*), 383 B.R. 560, 562–63 (Bankr. S.D. Ga. 2008) (citing 8 Lawrence P. King, *Collier on Bankruptcy* ¶ 1326.02[2][c], at 1326-12 (15th ed. rev. 2007).[17] The Southern District of Texas has adopted this interpretation, as evidenced by Bankruptcy Local Rule 4001(e)(2):

---

[17] The Court acknowledges that not all types of adequate protection payments are ordered by the court upon "notice and a hearing" as contemplated in Section 1326(a)(3). For example, some types of adequate protection payments may be authorized pursuant to local rules or procedures adopted by a particular court or district. Nevertheless, the Court agrees that the payments referenced in (a)(3) are, in fact, adequate protection payments. The phrase "notice and a hearing" is flexibly defined in Section 102(1) to include "such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances; but authorizes an act without an actual hearing if such notice is given properly and if such a hearing is not requested timely by a party in interest; or there is insufficient time for a hearing to be commenced before such act must be done, and the court authorizes such act." The requirements set in place for adopting local rules and procedures necessarily constitute adequate notice in satisfaction of Sections 1326(a)(3) and 102(1).

> In the event of a dismissal or conversion of the chapter 13 case, the trustee will distribute the proceeds in accordance with § 1326(a)(2). This will result, in most cases, in payments being made in the following order of priority: (A) First, to the vehicle lien holders in the amount of the adequate protection reserve; (B) Second, to debtor's counsel for unpaid fees . . . ; [and] (C) Third, to the debtor . . . .

*In re DeSardi*, 340 B.R. 790, 797 (Bankr. S.D. Tex. 2006) (quoting Bankruptcy Local Rule 4001(e)(2)).

Based on the foregoing, the Court finds that upon dismissal of a Chapter 13 case in which no plan is confirmed, funds held by the trustee will be distributed first to the recipients of unsatisfied adequate protection payments, then to administrative claimants, and finally to the debtor. Accordingly, because the Debtor's Chapter 13 case was dismissed prior to confirmation, Baker, as an administrative claimant, is not entitled to payment of his attorney's fees until the Trustee has satisfied all unpaid adequate protection claims.

2) <u>On the Dismissal Date, ASC was entitled to $23,997.18 in unsatisfied adequate protection payments and, therefore, should not be ordered to disgorge any of the $19,061.70 it received from the Chapter 13 Trustee.</u>

Prior to dismissal of the Debtor's Chapter 13 case, ASC—as servicing agent for Wells Fargo—received $46,800.00 in payments from the Chapter 13 Trustee. [Finding of Fact No. 9]. The amount of $46,800.00 represents 24 monthly payments of $1,950.00 (*i.e.* 24 x $1,950.00), and it is $1,950.00 which is the monthly amount due to the home lender under the Debtor's original and amended—proposed but unconfirmed—Chapter 13 plans. [Finding of Fact No. 9]. Upon dismissal of the Debtor's case, the Chapter 13 Trustee disbursed a lump sum payment of $19,061.70 to ASC. [Finding of Fact No. 9]. Baker requests an order from this Court requiring the Chapter 13 Trustee to recover this post-dismissal payment to ASC. [Finding of Fact No. 15].

As set forth above, Section 1326(a)(2) requires the Chapter 13 Trustee, upon dismissal of a Chapter 13 case, to disburse retained funds first to secured creditors in satisfaction of all unpaid

14

adequate protection claims.   Therefore, ASC should not be ordered to disgorge any post-dismissal payments it received from the Chapter 13 Trustee unless the payment was for an amount beyond the adequate protection payments due to ASC.

The Bankruptcy Code does not specifically define "adequate protection payments." *Perez*, 373 B.R. at 483.  Various provisions within Section 363 circumscribe the debtor's right to use property in which a secured creditor has an interest, but Section 363(e) states that upon request of a lienholder, the court "shall prohibit or condition such use . . . as is necessary to provide adequate protection of such interest." [18]   Section 361 recognizes three nonexclusive forms of adequate protection applicable to the debtor's continue use of a secured creditor's collateral: cash payments to the extent the collateral has declined in value, additional collateral to compensate the secured creditor for such a decline, or other relief "as will result in the realization by [the secured creditor] of the indubitable equivalent of such entity's interest in such property." This Court has previously held that the only way for a Chapter 13 debtor to supply adequate protection to real estate lienholders is to provide them with the "indubitable equivalent" of their interest in the real estate, which is the full amount of the contractual monthly payment due to the mortgagee. *In re Perez*, 339 B.R. 385, 400 (Bankr. S.D. Tex. 2006), *aff'd Perez v. Peake*, 373 B.R. 468 (S.D. Tex. 2007).[19]

---

[18] While Section 363 refers to the trustee's right to use, sale or lease property, Section 1303 provides that "the debtor shall have, exclusive of the trustee, the rights and powers of a trustee under sections 363(b), 363(d), 363(e), 363(f), and 363(l), of this title."  Therefore, when Section 363 is read in conjunction with Section 1303, a Chapter 13 debtor also has the right to use, sale or lease property according to the parameters set forth in Section 363.

[19] In arriving at this conclusion, the Court noted that the term "indubitable equivalent" is not defined in the Bankruptcy Code, but rather is drawn from Judge Learned Hand's opinion in *In re Murel Holding Corp.*, 75 F.2d 941 (2d Cir. 1935).  The Court relied on the legislative history to Section 363, which states that indubitable equivalent "gives the parties and the courts flexibility by allowing such other relief as will result in the realization by the protected entity of the value of its interest in the property involved.  Under this provision, the courts will be able to adapt to new methods of financing and to formulate protection that is appropriate to the circumstances of the case if none of the other methods would accomplish the desired result." H.R. REP. NO. 95-595, at 340 (1977), U.S. Code Cong. & Admin. News 1978, pp. 5963, 6296.  Because the other adequate protection methods set forth in Sections

Indeed, the Southern District of Texas has mandated by local rule that debtors provide home lenders with such adequate protection (*i.e.*, current mortgage payments) through funds disbursed by the Trustee during the course of a Chapter 13 case prior to the confirmation of the plan. Bankruptcy Local Rule 3015-1(b) provides that "[h]ome mortgage payments will be made through the chapter 13 trustee, in accordance with Home Mortgage Payment Procedures. Home Mortgage Payment Procedures shall be procedures adopted by the chapter 13 trustees and approved by the court." The Chapter 13 trustees in the Southern District of Texas adopted certain Home Mortgage Payment Procedures, and the Bankruptcy Judges in this District unanimously approved these procedures on September 29, 2005. As amended on December 20, 2007, the procedures state that:

> The debtor's plan payments to the chapter 13 trustee shall include the amount due on the debtor's regular monthly mortgage installments for a claim secured by a security interest in real property that is the debtor's principal residence pursuant to the terms of 11 U.S.C. § 1322(b)(5) ("the on-going mortgage") unless there is no default on the mortgage as of the petition date, the date of plan confirmation and the date of the filing of a plan modification. The following requirements will apply to all cases in which the Chapter 13 Plan deals with an arrearage: . . . (2) The debtor shall make payments to the trustee with the payments to be received by the trustee by a date that complies with the provisions of the security agreement concerning payment due dates. . . . (3) Subject to these procedures, the trustee is authorized[20] to disburse funds in payment of all regular contractual

---

361(1) and (2) are not sufficient—(1) it is not cost efficient to determine monthly depreciation on a debtor's principal residence and such payments violate Section 1322(b)(2) by modifying the rights of the home lender; and (2) Chapter 13 debtors typically do not have unencumbered assets on which to supply their home lenders with additional or replacement liens—this Court determined that "the only way to satisfy congressional intent is to use the flexible concept of 'indubitable equivalent' and hold the contractual monthly payment constitutes an indubitable equivalent under 11 U.S.C. § 363(3). *Perez*, 339 B.R. at 401.

[20] Baker emphasizes the use of the word "authorize" in the Home Mortgage Payment Procedures, and contends that because the Trustee is only "authorized," and not specifically "required," to disburse payments to the mortgage company prior to confirmation, the home lender is not absolutely entitled to such adequate protection. [Finding of Fact No. 15]. As set forth above, however, home lenders are entitled to adequate protection equal to the contractual amount due on the debtor's mortgage. The Home Mortgage Payment Procedures do not have any bearing on this right but rather supply the method by which such payments are to be made to the home lender. Even if the language presented in the procedures gives the Trustee discretion as to whether he will disburse payments to the home lender pre-confirmation, the fact remains that the Trustee did indeed make pre-confirmation payments in this case. Thus, the Court is unsure why Baker presents this argument, especially since the disbursement he seeks to have revoked was issued post-dismissal in accordance with the Trustee's statutory obligations under Section 1326(a)(2).

16

installment payments and other charges arising pursuant to the claim of a creditor that become due following the commencement of a case pursuant to the terms of the note and security agreement applicable to the claim.  Disbursements should commence as soon as is practicable.  If the trustee has available funds, the initial disbursement should precede the hearing on plan confirmation.

Accordingly, the Court finds that ASC was entitled to adequate protection payments from the Debtor, paid by the Chapter 13 Trustee, in an amount equal to the contractual mortgage payments due to ASC.  Such adequate protection payments are of the type contemplated under Section 1326(a)(2) as being payable to ASC upon pre-confirmation dismissal of the Debtor's case.  These payments were due according the dates set forth in the terms of the Adjustable Rate Note, commencing the month following the filing of the Debtor's petition (September 2007) [Finding of Fact No. 1] through the Dismissal Date (October 22, 2009) [Finding of Fact No. 4]. The amount of contractual mortgage payments due to ASC during this time period is derived from three sources: (1) the principal and interest owing under the terms of the Adjustable Rate Note from September 2007 through November 2008; (2) the adjustment provided for in the Agreed Judgment from the time the judgment was entered in December 2008 through May 2009; and (3) the final adjustment outlined in the Trustee's Notice of Intent to Disburse Adjusted Mortgage from its implementation date in June 2009 through the dismissal of the case in October 2009. [*See* Finding of Fact Nos. 6 & 16].

Computing the monthly payment due to ASC during each of these periods, ASC is entitled to $70,797.18 in adequate protection payments from the Debtor, payable through the Chapter 13 Trustee.[21]   As discussed above, ASC received monthly disbursements prior to

---

[21] The $70.797.18 due to ASC in adequate protection payments equals the sum of the amount due under the Adjustable Rate Note from September 2007 through May 2008 (9 months x $2,468.74 = $22,218.66) plus the amount due under the Adjustable Rate Note from June 2008 through November 2008 (6 months x $2,283.79 = $13,702.74) plus the amount due under the Agreement Judgment from December 2008 through May 2009 (6 months x $3,253.43 = $19,520.58) plus the amount due pursuant to the Trustee's Notice of Intent to Disburse Adjusted Mortgage from June 2009 through October 2009 (5 x $3,071.04). [Findings of Fact Nos. 6 & 16].

dismissal of this case totaling $48,800.00 and an additional post-dismissal payment of $19,061.70, for a total amount of $65,861.70. [Finding of Fact No. 9]. Thus, ASC has actually been underpaid a total of $4,935.48, but has chosen to not seek additional payment from the Chapter 13 Trustee. Accordingly, the Court finds that ASC is entitled to retain the full $19,061.70 disbursement it received from the Trustee following the dismissal of this Chapter 13 case, and that Baker's Motion should be denied.[22]

## C. The Court declines to vacate its prior orders granting Baker's fee applications.

Prior to dismissal of the Debtor's Chapter 13 case, Baker filed four fee applications—all of which were approved by this Court—for a total amount of $21,651.06 in fees and expenses. [Finding of Fact No. 7]. The Trustee now seeks, pursuant to Rule 60 of the Federal Rules of Civil Procedure (as made applicable by Bankruptcy Rule 9024), to vacate the Court's orders granting these four fee applications so that Baker's fee requests may be re-examined in light of the final disposition this case—namely, pre-confirmation dismissal of the Debtor's case. [Finding of Fact No. 18].

The Court first notes that it has the absolute right to reexamine Baker's fee requests as applications for interim compensation, irrespective of Rule 60 of the Federal Rules of Civil Procedure. Although Baker's prior fee applications did not specifically state that he was seeking payment of "interim" compensation [Finding of Fact No. 7], any compensation approved or paid

---

[22] While the Court finds that Baker's Motion should be denied because ASC is entitled to priority payment of its unsatisfied adequate protection claims pursuant to Section 1326(a)(2), the Court also recognizes the importance of the policy considerations articulated in the Trustee's response. [Finding of Fact No. 17]. Indeed, allowing attorneys' fees to be paid out of funds held by the trustee following pre-confirmation dismissal of a Chapter 13 case would deprive secured creditors of necessary adequate protection, thus leaving debtors in default of their loan agreements and at a high risk of having their assets foreclosed upon. Thus, the priority scheme promoted in Baker's Motion would act in contravention of the twin pillars of bankruptcy—obtaining discharge of a Debtor's debts and paying creditors' claims. *See In re T-H New Orleans Ltd. P'ship,* 188 B.R. 799, 807 (E.D. La. 1995), *aff'd,* 116 F.3d 790 (5th Cir. 1997).

Also, because the Court finds that ASC is entitled to retain the post-dismissal adequate protection payment it received from the Trustee, the Court declines to address whether Baker's Motion is an impermissible collateral attack on the Agreed Judgment, as asserted by ASC in its response. [Finding of Fact No. 16].

to a professional while a bankruptcy proceeding remains pending is considered "interim" compensation. *E.g. In re Augie/Restivo Baking Co.*, 64 B.R. 236, 238 (Bankr. E.D.N.Y. 1986) (holding that any compensation paid prior to conclusion of the bankruptcy case was "interim" compensation, even though the attorneys labeled their application one for "final" compensation). Section 331 specifically provides that:

> a debtor's attorney . . . employed under section 327 or 1103 of this title may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered before the date of such an application or reimbursement for expenses incurred before such date as is provided under section 330 of this title. After notice and a hearing, the court may allow and disburse to such applicant such compensation or reimbursement.

By operation of Section 103(a), the provisions of Sections 327 through 331, relating to the appointment and compensation of professionals, apply in Chapter 13 cases. 11 U.S.C. § 103(a) (expressly stating that "chapters 1, 3, and 5 of this title apply in a case under chapter 7, 11, 12, or 13 of this title"). Indeed, the statutory language set forth in Section 331 does not limit requests for interim compensation to cases filed under certain chapters. Congress' essential purpose in granting such a widespread right for bankruptcy professionals to seek interim compensation is to relieve such professionals of the burden of financing lengthy bankruptcy proceedings. *In re Evangeline Ref. Co.*, 890 F.2d 1312, 1321 (5th Cir. 1989). ("Interim fee awards are not final determinations intended to put a matter to rest. Rather, they are interlocutory and reviewable, and are intended only to provide some interim relief from the economic hardships of subsidizing litigation."). In fact, until a case is concluded, it is impossible for a court to ascertain the full value of the services rendered in comparison to the ultimate results achieved in the case. *In re Augie*, 64 B.R. at 238. Because of the speculative nature of interim fee awards, they are "always subject to the court's reexamination and adjustment during the course of the case." *In re*

*Evangeline*, 890 F.2d at 1321 (internal quotations and citations omitted). Thus, this Court may reexamine its prior orders granting Baker's interim fee requests without consideration of the parameters set forth in Rule 60 of the Federal Rules of Civil Procedure.

Nevertheless, because of the circumstances present in this case, the Court declines to undergo such a reevaluation. The Court notes that no additional compensation will be awarded to Baker by the Trustee in this case—as all funds have been disbursed out of the Debtor's estate and the Court has declined to compel ASC to return any of the payments it received from the Trustee. The Court acknowledges that the fact Baker will not receive any additional payment of his approved fees from the Trustee does not render the Trustee's Motion moot—as Baker's fee agreement with the Debtor allows him to seek payment directly from the Debtor. [Finding of Fact No. 11]. However, Baker has not indicated that he intends to seek payment directly from the Debtor [Finding of Fact No. 11], and, indeed, he is unlikely to do so given the Debtor's current financial condition. More importantly, the Debtor only disputes the fees and expenses requested in the Pending Fee Application, rather than the fee applications previously approved by this Court. [Finding of Fact No. 12]. The Debtor specifically testified before this Court that his only complaint regarding Baker's representation is that Baker did not personally represent him in his efforts to obtain a loan modification subsequent to the entry of the Agreed Judgment. [Finding of Fact No. 12]. Accordingly, for all the reasons set forth above, the Court declines to vacate its prior orders granting Baker's fee applications.

## D. Baker's Pending Fee Application is denied.

Baker filed the Pending Fee Application on October 26, 2009, within 20 days following the entry of the order of dismissal on the docket, seeking payment for $7,927.50 of fees and $50.53 of expenses, for a total amount of $7,978.03. [Finding of Fact No. 10]. Section

330(a)(4)(B) provides that in a "chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section." These "other factors" include those set forth in Section 330(a)(3), namely:

> In determining the amount of reasonable compensation to be awarded to . . . [a] professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—(A) the time spent on such services; (B) the rates charged for such services; (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title; (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

Thus, according to Sections 330(a)(4)(B) and (a)(3), the Court must first consider whether Baker's services were necessary, beneficial, or in any way valuable to the Debtor. When a Chapter 13 plan is confirmed, there is an obvious, demonstrated benefit to the debtor, and it is presumed that the debtor's counsel aided in obtaining this benefit. *In re Phillips*, 291 B.R. 72, 82 (Bankr. S.D. Tex. 2003). However, when a Chapter 13 case is dismissed prior to plan confirmation, counsel must provide the Court with evidence of substantial, valuable professional services including investigation, evaluation, and counseling that were intended and designed to achieve an objective appropriate for Chapter 13 cases. *Id.* at 74, 82 (noting that "[b]ecause the [Chapter 13] case was dismissed prior to plan confirmation, there was no apparent benefit to the Debtor").

Baker testified that he believes his services in this case benefited both the Debtor and the

21

Debtor's estate, even though the Debtor's case was dismissed prior to confirmation. [Finding of Fact No. 13]. Baker noted that he revoked the foreclosure of the Debtor's home by filing the Adversary Proceeding and entering into the Agreed Judgment with ASC. [Finding of Fact No. 13]. Baker also emphasized that he obtained an order from this Court determining that the second lien on the Debtor's homestead was an unsecured claim and requiring the second lienholder to return funds received from the Trustee to the estate. [Finding of Fact No. 13].

The Court does not find that Baker's services were necessary and beneficial to the Debtor and the estate. First, given the Debtor's current circumstances, it is unlikely that he will be able to prevent ASC from once again foreclosing on his homestead. [Finding of Fact Nos. 13 & 14]. The Debtor remains in default of his note and has not agreed to the terms of any loan modification presented by ASC. [Finding of Fact No. 13]. Further, this Court's order designating the second lienholder's claim as unsecured no longer benefits the Debtor since his case has been dismissed. In fact, as noted by the Trustee's counsel, the order stripping the second lien may have actually harmed the Debtor by increasing the amount he now owes to the second lienholder.[23] [Finding of Fact No. 14].

While Baker maintains that he would have obtained confirmation of an amended plan had the Debtor not refused to accept all of the loan modifications proposed by ASC [Finding of Fact No. 13], the Court stresses that Baker continued to incur fees and expenses long after the deadline for filing such an amended plan had passed. Specifically, the Agreed Judgment, which was entered on December 29, 2008, required the Debtor to file an amended plan within 40 days

---

[23] The order signed by this Court determining that the second lien was an unsecured claim in this Chapter 13 case also required the second lienholder to return to the estate all prior payments it had received from the Trustee. [Finding of Fact No. 13]. The second lienholder did, in fact, return $7,959.00 to the Trustee [Finding of Fact No. 13], but since the order stripping the second lien is no longer valid and the Debtor's case has been dismissed prior to confirmation, the Debtor now owes the second lienholder more money than he would have had the lienholder not been ordered to refund the payments it received from the Trustee.

following the entry of the Agreed Judgment on the docket. [Finding of Fact No. 6].   Baker continued to incur fees and expenses by taking actions that he claims provided a benefit to the estate, such as stripping the second lien on the Debtor's homestead, after the deadline had passed for filing an amended plan. [Finding of Fact No. 14].   Because Baker knew the Debtor would not agree to the terms of a loan modification—and thus would not sign off on the terms of an amended plan incorporating such loan modification—shortly following the entry of the Agreed Judgment [Finding of Fact No. 14], Baker did not generate the fees and expenses sought in the Pending Fee Application[24] with a good faith belief that he would obtain confirmation of a Chapter 13 plan in this case. *See Phillips*, 291 B.R. at 83.[25]

Based on the foregoing, the Court finds that Baker's services set forth in the Pending Fee Application were neither necessary, valuable, nor beneficial to the Debtor.   Thus, further consideration of Baker's timeliness in providing these services and the reasonableness of his hourly rate is irrelevant.   Indeed, the bankruptcy courts have broad and inherent authority to deny any and all compensation when an attorney fails to meet the requirements of the Bankruptcy Code governing fee awards (*i.e.*, Sections 327, 329, 330 and 331). *See, e.g. In re Prudhomme*, 43 F.3d 1000, 1003 (5th Cir. 1995); *Anderson v. Anderson (In re Anderson)*, 936 F.2d 199, 204 (5th Cir. 1991) (recognizing both that bankruptcy courts have broad discretion, as courts of equity, to grant or deny fees and that debtors' attorneys have no absolute right to any fee awards absent strict compliance with the Code and Rules).   Therefore, because Baker failed to achieve either of

---

[24] Specifically, the Agreed Judgment was entered on December 29, 2008 [Finding of Fact No. 6], and the fees and expenses for which Baker seeks compensation in the Pending Fee Application were incurred between January 13, 2009 and October 23, 2009 [Finding of Fact No. 10].

[25] Pursuant to Rule 9011, counsel for the debtor may not file, or later advocate, a petition or pleading that is filed for an improper purpose.   A proper purpose for filing a Chapter 13 bankruptcy petition is to confirm a plan of reorganization, and ultimately obtain a discharge of the Debtor's debts pursuant to that plan.   However, the Court declines to further evaluate whether Baker violated Rule 9011 because the matters pending before this Court do not raise Rule 9011 violations.

principal goals of bankruptcy (*i.e.* discharge of the Debtor's debts and payment of creditors' claims) and because he has already obtained approval for fees and expenses incurred in this case prior to the time it became apparent that he would not obtain confirmation of a plan, the Court finds that the Pending Fee Application should be denied in its entirety.

## IV. CONCLUSION

Contrary to the position asserted in Baker's Motion, the Bankruptcy Code does not grant priority to administrative claims, such as Baker's fees, when funds held by a Chapter 13 trustee are distributed upon pre-confirmation dismissal of a Chapter 13 case. Rather, Section 1326(a)(2) requires the Trustee to satisfy all unpaid adequate protection claims, including the contractual mortgage payments due to ASC, before paying any approved attorneys' fees and returning any remaining funds to the Debtor. Because ASC was actually owed more adequate protection than it received from the Trustee, ASC is not required to return the $19,061.70 post-dismissal payment. Thus, Baker's Motion should be denied. While the Court notes that it has the authority to reevaluate the interim compensation it approved pursuant to Baker's prior fee applications, it nevertheless declines to do so given the circumstances present in this case (*i.e.* that Baker will not receive any additional payments from the Trustee because there is no money left in the estate and the Debtor does not dispute the value of the fees and expenses previously approved by this Court). Therefore, the Trustee's Motion is denied. The Court does conclude, however, that the fees and expenses requested in the Pending Fee Application were not necessary, valuable, or beneficial to the Debtor. Accordingly, the Pending Fee Application should also be denied.

An order consistent with this Opinion will be entered on the docket simultaneously with the entry on the docket of this Opinion.

Signed on this 6th day of October, 2010.

Jeff Bohm
United States Bankruptcy Judge