IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

**ENTERED**
**04/14/2011**

| | | |
|---|---|---|
| IN RE: | § | |
| CRAIG WARREN FERNANDEZ, I, | § | BANKRUPTCY NO. 07-35173-H4-13 |
| | § | |
| Debtor. | § | |
| | § | |
| REESE W. BAKER and | § | |
| BAKER & ASSOCIATES, | § | |
| | § | |
| Appellants, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-10-4044 |
| | § | |
| DAVID G. PEAKE, CHAPTER 13 | § | |
| TRUSTEE, and AMERICA'S | § | |
| SERVICING COMPANY, | § | |
| | § | |
| Appellees. | § | |

### MEMORANDUM OPINION AND ORDER

Appellant, Reese W. Baker ("Baker") of Baker & Associates, appeals the Bankruptcy Court's October 6, 2010, Memorandum Opinion[1] and Order[2] denying Baker's Emergency Motion to Compel Chapter 13 Trustee to Pay Approved Fees to Baker & Associates and to Revoke Payment to Home Mortgage Lender.[3] Pending before the court are the Brief for Appellant Reese W. Baker (Docket Entry No. 12), the Brief of Appellee David G. Peake (Docket Entry No. 13), and the Brief for Appellee America's Servicing Company ("ASC") (Docket Entry No. 14).

---

[1] In re Fernandez, 441 B.R. 84 (Bankr. S.D. Tex. 2010), and Docket Entry No. 191 in Bankruptcy Case No. 07-35173-H4-13.

[2] Docket Entry No. 192 in Bankruptcy Case No. 07-35173-H4-13.

[3] Docket Entry No. 171 in Bankruptcy Case No. 07-35173-H4-13.

For the reasons explained below, the Bankruptcy Court's Memorandum Opinion and Order will be affirmed.

## I.  Factual and Procedural Background

On August 1, 2006, Wells Fargo Bank, N.A. d/b/a America's Servicing Company ("ASC"), the mortgage creditor on the debtor's homestead, sold the debtor's homestead at a foreclosure sale.[4]  On August 4, 2007, Baker filed a Chapter 13 bankruptcy petition on behalf of debtor, Craig Warren Fernandez, I.[5]  On September 11, 2007, Baker filed a uniform Chapter 13 plan and motion for valuation of collateral on the debtor's behalf.[6]  On February 4, 2008, the Bankruptcy Court entered an order confirming the Chapter 13 plan,[7] but due to a mistake in confirming the plan, the Bankruptcy Court vacated the confirmation order on March 10, 2008.[8]

On March 7, 2008, the debtor filed an adversary proceeding (Adversary No. 08-03068 ("Adversary Proceeding")) against ASC seeking to (1) set aside the foreclosure; (2) transfer possession of the homestead to the debtor; (3) quiet title to the homestead; (4) reinstate the loan documents on the homestead; and (5) award

---

[4]Brief for Appellant Reese W. Baker ("Appellant's Brief"), Docket Entry No. 12, p. 4.

[5]Id. at 2.

[6]Docket Entry No. 18 in Bankruptcy Case No. 07-35173-H4-13.

[7]Docket Entry No. 52 in Bankruptcy Case No. 07-35173-H4-13.

[8]Docket Entry No. 62 in Bankruptcy Case No. 07-35173-H4-13.

attorney's fees to the debtor.[9]   On December 29, 2008, the Bankruptcy Court entered an Agreed Final Judgment between the debtor and ASC dismissing the Adversary Proceeding.[10]   The Agreed Final Judgment rescinded the foreclosure sale of the debtor's homestead, and required the debtor to file an amended plan within 40 days.[11]   The Agreed Final Judgment also revived the promissory note and deed of trust executed by the debtor and his wife "subject to payment pursuant to this judgment."[12]   The judgment required payment as follows:

> FURTHER ORDERED that the regular monthly mortgage payment due Wells Fargo Bank, N.A. d/b/a America's Servicing Company commencing December 1, 2008 is $3,253.43 plus 1/12 forced place wind insurance escrow or 1/12 wind insurance escrow for a policy obtained by Debtor and forwarded to Wells Fargo Bank, N.A. d/b/a America's Servicing Company. This amount consists of $2,283.79 principal and interest as of December, 2008, $899.39 for 1/12th tax escrow, $70.25 for 1/12th hazard insurance escrow, plus wind insurance. Debtor shall pay ongoing homeowners assessment fees, if any, directly without escrow. Regular monthly payments shall continue at this amount until otherwise adjusted (i) pursuant to the adjustable interest rate in the note or (ii) to maintain adequate escrow as notified by Wells Fargo Bank, N.A. d/b/a America's Servicing Company subject to this Court's procedure on adjustment of on-going payments or (iii) to account for any proper adjustments arising after note reinstatement not accounted for in this order. The additional amount of the on going mortgage not provided

---

[9]Appellant's Brief, Docket Entry No. 12, p. 3.

[10]Docket Entry No. 20 in Adversary Proceeding No. 08-03068.

[11]Id. at 1 and 3.   See also Appellant's Brief, Docket Entry No. 12 at 4.

[12]Docket Entry No. 20 in Adversary Proceeding No. 08-03068, p. 1.

for in the plan filed July 17, 2008 shall be provided for as arrears in the amended plan;

FURTHER ORDERED that the Trustee is authorized to immediately disburse all on-going mortgage payments accruing from the petition date pursuant to the plan to Wells Fargo Bank, N.A. d/b/a America's Servicing Company pursuant to the Chapter 13 Trustee Procedures for Administration of Home Mortgage Payments in the Southern District of Texas, Houston, Division.[13]

On October 22, 2009, the debtor's Chapter 13 bankruptcy was dismissed because no amended plan was ever filed by Fernandez or confirmed.[14] Prior to dismissal of the Chapter 13 bankruptcy, the Bankruptcy Court approved fee applications from Baker totaling $21,651.06. Baker received payments from the Chapter 13 Trustee totaling $9,877.97, and payments from the debtor totaling $3,400.00.[15] ASC received $46,800.00 in payments from the Chapter 13 Trustee before dismissal, and $19,061.70 from the Chapter 13 Trustee after dismissal, for a total amount of $65,861.70.[16]

Following dismissal of debtor's Chapter 13 case, Baker filed a fee application and emergency motion to compel the Chapter 13 trustee to pay approved fees and to revoke the trustee's payment to

---

[13]Id. at 2-3.

[14]Docket Entry No. 167 in Bankruptcy Case No. 07-35173-H4-13. See also Appellant's Brief, Docket Entry No. 12, p. 4.

[15]In re Fernandez, 441 B.R. at 87-88 (Finding of Fact Nos. 7-8). See also Appellant's Brief, Docket Entry No. 12, p. 4.

[16]In re Fernandez, 441 B.R. at 88 (Finding of Fact No. 9). See also Appellant's Brief, Docket Entry No. 12, p. 4.

ASC.[17]   Baker's motion asserted that "[s]ection 1326(a)(2) and 1326(b) provide that payments made by the debtor to the chapter 13 trustee are to be used to pay administrative claims before funds are returned to the Debtor or paid to creditors."[18]   At the motion hearing conducted by the Bankruptcy Court

> Baker testified that because — according to the Southern District of Texas Chapter 13 Home Mortgage Payment Procedures — the Trustee is only "authorized," rather than "required," to disburse contractual mortgage payments to a home lender prior to confirmation of a Chapter 13 plan, the home lender is not necessarily entitled to such payments . . . Thus, Baker request[ed] an order from [the bankruptcy] Court requiring the Chapter 13 Trustee to retrieve the $19,061.00 payment to Wells Fargo and requiring payment of all allowed fees and expenses to Baker.

In re Fernandez, 441 B.R. at 91.  ASC responded that Baker's fees do not have priority over payment of the ongoing post-petition monthly mortgage payment.  Citing the Agreed Final Judgment entered in the Adversary Proceeding, ASC argued that the Chapter 13 trustee's disbursements of monthly mortgage payments was ordered by the Bankruptcy Court, and that Baker's motion for revocation of monthly mortgage payments was an impermissible collateral attack on the Agreed Final Judgment.  Id.

The Bankruptcy Court denied Baker's motion and held that ASC could retain disbursements received from the trustee.[19]   The Bankruptcy Court concluded that

---

[17]Docket Entry No. 171 in Bankruptcy Case No. 07-35173-H4-13.

[18]Id. ¶ 13.

[19]In re Fernandez, 441 B.R. at 101.

[c]ontrary to the position asserted in Baker's Motion,
the Bankruptcy Code does not grant priority to
administrative claims, such as Baker's fees, when funds
held by a Chapter 13 trustee are distributed upon pre-
confirmation dismissal of a Chapter 13 case.  Rather,
Section 1326(a)(2) requires the Trustee to satisfy all
unpaid adequate protection claims, including the
contractual mortgage payments due to ASC, before paying
any approved attorneys' fees and returning any remaining
funds to the Debtor.  Because ASC was actually owed more
adequate protection than it received from the Trustee,
ASC is not required to return the $19,061.70 post-
dismissal payment.

Id. at 101.

## II.  **Standard of Review**

A district court has jurisdiction to hear an appeal from a

bankruptcy court's final judgment or order.  28 U.S.C. § 158(a).

The Bankruptcy Court's "[f]indings of fact, whether based on oral

or documentary evidence, shall not be set aside unless clearly

erroneous, and due regard shall be given to the opportunity of the

bankruptcy court to judge the credibility of the witnesses."  Fed.

R. Bankr. P. 8013.  The Bankruptcy Court's conclusions of law and

conclusions on mixed questions of law and fact and application of

law to the facts are reviewed de novo.  In re U.S. Bass Corp., 171

F.3d 1016, 1021 (5th Cir. 1999).

## III.  **Analysis**

Baker contends that three of the Bankruptcy Court's

conclusions are wrong:  (1) "[T]he Bankruptcy Code does not grant

priority to administrative claims, such as Baker's fees, when funds

held by a Chapter 13 trustee are distributed upon pre-confirmation

-6-

dismissal of a Chapter 13 case;"[20] (2) "Section 1326(a)(2) requires the Trustee to satisfy all unpaid adequate protection claims, including the contractual mortgage payments due to . . . ASC, before paying any of Baker's approved attorney's fees and returning any remaining funds to the Debtor;"[21] and (3) "ASC was actually owed more adequate protection than it received from the Trustee and, thus, is not required to return the $19,061.70 post-dismissal payment that it received from the Trustee."[22]   In his brief Baker advances the following seven arguments:   (1) ASC is not entitled to adequate protection payments from the beginning of the Chapter 13 case in an amount equal to its contractual mortgage payments when funds are not sufficient to fully pay administrative fees and expenses under § 507(a)(2); (2) calculation of adequate protection payments for home loans as an amount equal to the full amount of the contractual monthly payment due to the mortgagee is incorrect; (3) administrative claims of attorneys for services provided to debtors in Chapter 13 cases must get equal treatment with fees paid to the standing Chapter 13 trustees; (4) § 1326(a)(3) does not require that a home mortgage lender be fully paid before payments are made to counsel for the debtor; (5) the district court case of Perez v. Peake supports the position of Baker; (6) the Fernandez

---

[20]Appellant's Brief, Docket Entry No. 12, p. 1 (quoting In re Fernandez, 441 B.R. at 92 and 101).

[21]Id. (citing In re Fernandez, 441 B.R. at 101).

[22]Id. (citing In re Fernandez, 441 B.R. at 101).

opinion conflicts with the district court opinion in <u>Perez</u>; and (7) the Bankruptcy Court's determination that the home mortgage lender must be paid in full before any payments are made to counsel for the debtor has a chilling effect on the representation of debtors.

Citing <u>Perez v. Peake (In re Perez)</u>, 339 B.R. 385 (Bankr. S.D. Tex. 2006), <u>aff'd</u>, 373 B.R. 468 (S.D. Tex. 2007), appellees contend that "[t]he disbursements carried out in the Debtor's bankruptcy case were made not only according to all relevant precedent, rules, and procedures, but also in accordance with the Agreed Adversary Judgment to which the Appellant himself was a signor."[23] In <u>Perez</u>, 373 B.R. at 468, the district court affirmed the bankruptcy court's holding that Bankruptcy Local Rule 3015(b) and the procedures implementing the rule, which provide for post-petition home mortgage payments to be made through the Chapter 13 trustee instead of directly by the debtor, do not violate the Bankruptcy Code's priority scheme by allowing home mortgage payments to be made ahead of administrative claims, including debtors' attorney's fees.  In so holding the district court concluded that the local rule and procedures (1) do not violate the Bankruptcy Code because they require conduit payments, <u>id.</u> at 477-78; (2) do not violate the

---

[23]Brief of Appellee David G. Peake ("Trustee's Brief"), Docket Entry No. 13, p. 6.  <u>See also</u> Brief for Appellee America's Servicing Company, As Servicing Agent for Property Asset Management, Inc. Its Assigns and/or Successors in Interest ("ASC's Brief"), Docket Entry No. 14.

Bankruptcy Code prohibition against modifying a mortgage contract, id. at 478-81; (3) do not violate the Bankruptcy Code by allowing pre-confirmation payments by the trustee, id. at 481-88; and (4) do not violate the priority payment provisions of the Bankruptcy Code, id. at 489-92.

**A.    The Bankruptcy Code Does Not Grant Priority to Administrative Claims, Such as Baker's Fees, When Funds Held by a Chapter 13 Trustee are Distributed Upon Pre-confirmation Dismissal**

Citing the district court's opinion in Perez, 373 B.R. at 468, Baker states that "[t]he requirement for debtors to make their on-going mortgage payments through the chapter 13 trustee is not in dispute in this appeal."[24]   Baker contends, instead, that the reasoning in Perez is not sufficient to resolve the priority payment issue raised in this case because

> [n]either the bankruptcy court nor the District Court in *Perez* addressed the issue as to the distribution of funds being held by the chapter 13 trustee when the chapter 13 trustee has insufficient funds to fully pay all mortgage claims, secured claims, priority claims and administrative expense claims.[25]

Citing Perez, 373 B.R. at 468, the Trustee argues that "[t]he issue of whether 'debtor's attorney's fees must be fully paid before any other creditor, whether secured or unsecured, including the mortgage lender' has been fully litigated."[26]   The Trustee explains that

---

[24]Appellant's Brief, Docket Entry No. 12, p. 8.

[25]Id. at 8-9.

[26]Trustee's Brief, Docket Entry No. 13, p. 3.

> [i]n *Perez*, the Court, relying on *Marrama v. Citizens Bank of Massachusetts*, [127 S.Ct. 1105 (2007),] determined that "the Local Rule and Procedure presumptively requiring conduit payments of home mortgage loans did not violate the Bankruptcy Code's priorities for paying administrative claims." *Perez* at 491-2 . . . It was not necessary for the *Perez* Court to determine that such conduit payments are, per se, "adequate protection" payments for the Court to reach its conclusion, given the Court's motive to correct previous abuses of the bankruptcy process.[27]

In <u>Perez</u> the debtor and his attorney, Baker, — the appellant

in this case — challenged

> the bankruptcy court's conclusion that the Local Rule [3015] and Procedures do not violate the Code's priority scheme by allowing home mortgage payments to be made ahead of administrative claims, including — indeed, primarily consisting of — the debtors' attorney's fees. The appellants argued that under section 1326(b)(1), the debtors' attorney's fees must be fully paid before any other creditor, whether secured or unsecured, including the mortgage lender . . . The amici argued that a mortgagee's rights cannot be subordinated to the payment of the debtor's attorney's fees . . . The trustee argue[d] that Chapter 13 does not require that a debtor's attorney's fees must be paid in full before each installment payment to the mortgage lender.

<u>Perez</u>, 373 B.R. at 489. The district court rejected the

appellant's argument and affirmed the bankruptcy court's conclusion

that the local rule and procedures do not violate the priority

payment sections of the Bankruptcy Code. <u>Id.</u> at 489-92. The

district court found the following provisions of the Bankruptcy

Code, as amended in 2005 by the Bankruptcy Abuse Prevention and

Consumer Protection Act ("BAPCPA"), relevant to its holding:   11

---

[27]<u>Id.</u> at 3-4.

U.S.C. § 507(a) governing the priority of expenses and claims;[28] 11 U.S.C. § 1322 governing the required contents of a Chapter 13 Plan;[29] and 11 U.S.C. § 1326 governing the order of payments in a

---

[28]Section 507(a) states in relevant part:

(a) The following expenses and claims have priority in the following order:

   (1)  First:

      (A)  Allowed unsecured claims for domestic support obligations

      . . .

      (C)  If a trustee is appointed or elected under section 701, 702, 703, 1104, 1202, or 1302, the administrative expenses of the trustee allowed under paragraphs (1)(A), (2), and (6) of section 503(b) shall be paid before payment of claims under subparagraphs (A) and (B), to the extent that the trustee administers assets that are otherwise available for the payment of such claims.

   (2)  Second, administrative expenses allowed under section 503(b) of this title, and any fees and charges assessed against the estate under chapter 123 of title 28.

11 U.S.C. § 507(a).

[29]The applicable version of § 1322 states in relevant part:

(a) The plan shall --

   (1)  provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan;

   (2)  provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 of this title, unless the holder of a

                   (continued...)

-11-

---

[29](...continued)

   particular claim agrees to a different treatment of
   such claim;

   (3)  if the plan classifies claims, provide the
   same treatment for each claim within a particular
   class; and

   (4)  notwithstanding any other provision of this
   section, a plan may provide for less than full
   payment of all amounts owed for a claim entitled to
   priority under section 507(a)(1)(B) only if the
   plan provides that all of the debtor's projected
   disposable income for a 5-year period beginning on
   the date that the first payment is due under the
   plan will be applied to make payments under the
   plan.

(b) Subject to subsections (a) and (c) of this section,
the plan may --

   . . .

   (2)  modify the rights of holders of secured
   claims, other than a claim secured only by a
   security interest in real property that is the
   debtor's principal residence, or of holders of
   unsecured claims, or leave unaffected the rights of
   holders of any class of claims;

   (3)  provide for the curing or waiving of any
   default;

   (4)  provide for payments on any unsecured claim to
   be made concurrently with payments on any secured
   claim or any other unsecured claim;

   (5)  notwithstanding paragraph (2) of this
   subsection, provide for the curing of any default
   within a reasonable time and maintenance of
   payments while the case is pending on any unsecured
   claim or secured claim on which the last payment is
   due after the date on which the final payment under
   the plan is due.

11 U.S.C. § 1322 (effective April 1, 2007, to March 31, 2010).

-12-

Chapter 13 Plan.[30]  Recognizing that courts are divided over whether § 1326(b)(1) requires § 507(a)(2) administrative expenses — including the debtor's attorney's fees — to be paid in full before payment of other claims, and that the local rule and procedures had been designed to address an abuse created by prior practice, the district court concluded that

> [t]he appellants' position that administrative expenses must be paid in full before the trustee can make any

---

[30]Section 1326 states in relevant part:

    (a)    (1)  Unless the court orders otherwise, the debtor shall commence making payments not later than 30 days after the date of the filing of the plan or the order for relief, whichever is earlier, in the amount --

        . . .

        (2)  A payment made under paragraph (1)(A) shall be retained by the trustee until confirmation or denial of confirmation.  If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan as soon as is practicable.  If a plan is not confirmed, the trustee shall return any such payments not previously paid and not yet due and owing to creditors pursuant to paragraph (3) to the debtor, after deducting any unpaid claim allowed under section 503(b).

        (3)  Subject to section 363, the court may, upon notice and a hearing, modify, increase, or reduce the payments required under this subsection pending confirmation of a plan.

    (b)    Before or at the time of each payment to creditors under the plan, there shall be paid -

        (1)  any unpaid claim of the kind specified in section 507(a)(2) of this title.

11 U.S.C. § 1326.

> postpetition mortgage installment payment to a home
> mortgage lender rests on an interpretation of a Code
> provision so unclear that bankruptcy courts have divided
> over its meaning.  The appellants' position is in direct
> conflict with the clear Code command to protect the
> rights of home mortgage lenders.   The appellant's
> position would also frustrate the bankruptcy court's
> ability to curtail the abuses and inefficiencies that had
> resulted from . . . prior practice . . . The bankruptcy
> court interpreted the Code to give full effect to the
> express statutory command to protect the interests of the
> secured home mortgage lender, concluding that under
> section 1322(b)(2), "mortgage payments reign supreme."
> 339 B.R. at 408.

<u>Perez</u>, 373 B.R. at 491.  Citing <u>Marrama</u>, 127 S.Ct. at 1105, the

district court explained that when

> there is an inconsistency between an express statutory
> directive — to protect a mortgagee's right to receive
> home mortgage payments — and a general statutory
> provision that is unclear and subject to conflicting case
> law interpretations . . . a bankruptcy court . . . has
> the authority to reach a result that achieves the express
> Code requirement and is necessary to curtail a specific
> abuse of the bankruptcy process.  The bankruptcy court
> properly concluded that the Local Rule and Procedure
> presumptively requiring conduit payments of home mortgage
> loans did not violate the Bankruptcy Code's priorities
> for paying administrative claims.  This conclusion does
> not depend on characterizing the preconfirmation mortgage
> payments ad adequate protection payments.  The bankruptcy
> court's conclusion that the Local Rule and Procedures did
> not violate the priority payment sections of the Code is
> affirmed.

<u>Perez</u>, 373 B.R. at 491-92.

The priority payment issue that Baker raises in this case

differs only slightly — if at all — from the priority payment issue

that was raised and rejected in <u>Perez</u>.  In <u>Perez</u> the appellant

argued that administrative expenses — and in particular the

debtor's attorney's fees — must be paid in full before the trustee

can make any post-petition payments to a home mortgage lender.

Here, Baker argues that if administrative expenses — and in particular the debtor's attorney's fees — are not paid in full, they must be paid partially and concurrently with any post-petition payment to a home mortgage lender.  Asserting that the Bankruptcy Court's opinion in this case conflicts with <u>Perez</u> because the district court in <u>Perez</u> recognized that "[t]he new procedures require adequate protection payments to be made preconfirmation and also *requires payment of post-petition secured claims concurrently with priority and administrative claims*,"[31] Baker argues that "[in] order to pay these different types of claims concurrently, one class of creditor cannot [be] fully paid before another creditor is entitled to receive payments."[32]

Although this court is not bound by <u>Perez</u>, the court concludes that Baker's contention — that the debtor's mortgage lender is not entitled to be fully paid for pre-confirmation, post-petition mortgage payments unless and until Baker has received at least partial payment for his fees — fails for the same reasons that the appellants' priority argument failed in <u>Perez</u>:

> The appellants' position is in direct conflict with the clear Code command to protect the rights of home mortgage lenders.  The appellant's position would also frustrate the bankruptcy court's ability to curtail the abuses and inefficiencies that had resulted from . . . prior practice . . . The bankruptcy court interpreted the Code

---

[31]Appellant's Brief, Docket Entry No. 12, p. 23 (citing <u>Perez</u>, 373 B.R. at 491).

[32]<u>Id.</u>

> to give full effect to the express statutory command to
> protect the interests of the secured home mortgage
> lender, concluding that under section 1322(b)(2),
> "mortgage payments reign supreme."  339 B.R. at 408.

Perez, 373 B.R. at 491.  Baker's contention that the Trustee should

be required to divert funds from the outstanding mortgage to pay

attorney's fees would keep the mortgage in a constant state of flux

and deprive the Trustee's disbursements of finality.

Baker contends that this result is "unfair, abusive to

counsels for debtors, and creates a 'chilling effect' on

representing debtors in chapter 13 cases."[33]  Baker explains that

> [i]n the *Fernandez* case, the bankruptcy court determined
> that Baker had approved fee applications totaling
> $21,651.06 . . . The bankruptcy court found that Baker
> had received payments of $9,877.97 from the chapter
> 13 trustee and had received $3,400.00 from the Debtor . . .
> Baker received payment of approximately 61% of his
> approved fees.
>
> The bankruptcy court determined that the monthly payments
> due to ASC during the period of the chapter 13 plan were
> $70,797.18 . . . The bankruptcy court determined that ASC
> had received a total of $65,861.70 in payments from the
> chapter 13 trustee . . . ASC received approximately 93%
> of its contractually due monthly payments for the term of
> the pending chapter 13 case.
>
> Baker believes that a chilling effect occurs when the
> secured lienholder gets paid over 93% of its claim, Baker
> gets paid approximately 63% of his claim and the mortgage
> lender exits with its first lien intact.[34]

The court is not persuaded that the Bankruptcy Court's

Memorandum Opinion and Order in this case will have a chilling

---

[33]Id. at 10 and 24-28.

[34]Id. at 25-26.

-16-

effect on the representation of debtors.  This case was filed August 4, 2007, and was not dismissed until October 22, 2009. Baker failed to offer any evidence showing that the length of time that the case took to resolve is typical of Chapter 13 cases in general, or that occasional occurrences such as this when debtor's counsel is not fully paid will have a chilling effect on representation of debtors.  As the district court observed in Perez, "the Southern District of Texas does not delay confirmation until after the claims-bar date, but instead reaches confirmation soon after the section 341 meeting, pre-confirmation payments are a very small part of the  payments addressed by the Local Rule and Procedures."  Perez, 373 B.R. at 486.

Asserting that the Chapter 13 trustee has been paid his fees,[35] Baker also contends that administrative claims of attorneys for services provided to debtors in Chapter 13 cases must get equal treatment with fees paid to the standing Chapter 13 trustees.[36] This contention has no merit because it conflicts with the priority payment system provided by 11 U.S.C. § 507(a), which identifies administrative expenses of the trustee as a "first" priority, and the administrative expenses allowed under § 503(b) — which includes fees for a debtor's attorney — as a "second" priority.  See 11 U.S.C. § 507(a) and above, n.29.

---

[35]Id. at 16.

[36]Id. at 13-18.

**B.    11 U.S.C. § 1326(a)(2) Required the Trustee to Satisfy All Contractual Mortgage Payments Due to ASC Before Paying Any of Baker's Approved Attorney's Fees**

In 2005, 11 U.S.C. § 1326(a) was amended to provide for payment to creditors in some circumstances when a Chapter 13 case is dismissed prior to confirmation.  Section 1326(a) provides that

> (a)(1) **[u]nless the court orders otherwise**, the debtor shall commence making payments not later than 30 days after the date of the filing of the plan or the order for relief, whichever is earlier, in the amount --
>
> > (A)  proposed by the plan to the trustee.
>
> > . . .
>
> (2) A payment made under paragraph (1)(A) shall be retained by the trustee until confirmation or denial of confirmation . . . **If a plan is not confirmed, the trustee shall return any such payments not previously paid and not yet due and owing to creditors pursuant to paragraph (3) to the debtor**, after deducting any unpaid claim allowed under section 503(b).
>
> (3) Subject to section 363, **the court may, upon notice and a hearing, modify . . . the payments required under this subsection pending confirmation of a plan.**

11 U.S.C. § 1326(a) (emphasis added).  Citing <u>Perez</u>, 373 B.R. at 486, the Bankruptcy Court concluded that "[r]ead literally, Section 1326(a)(2) conditions the disbursement to creditors on whether the court has entered an order modifying payments otherwise required by Section 1326(a)."  <u>In re Fernandez</u>, 441 B.R. at 94.  Citing the Agreed Final Judgment entered in the Adversary Proceeding, appellees contend that 11 U.S.C. § 1326(a)(2) requires the trustee to satisfy all contractual mortgage payments due to ASC before

-18-

paying Baker's attorney's fees because the Bankruptcy Court ordered
the trustee to make those payments.[37]

In this case, the debtor's home mortgage lender foreclosed on
the debtor's home before the debtor filed his Chapter 13 petition.
The debtor filed an adversary proceeding to set aside the
foreclosure.  The adversary proceeding ended with entry of an
Agreed Final Judgment that authorized immediate disbursement of all
mortgage payments accruing from the petition date.  The Agreed
Final Judgment expressly

> ORDERED that the Trustee is authorized to immediately
> disburse all on-going mortgage payments accruing from the
> petition date pursuant to the plan to Wells Fargo Bank,
> N.A. d/b/a America's Servicing Company pursuant to the
> Chapter 13 Trustee Procedures for Administration of Home
> Mortgage Payments in the Southern District of Texas,
> Houston, Division.[38]

The amount of the monthly mortgage payment was also expressly set
by the Agreed Final Judgment:

> ORDERED that the regular monthly mortgage payment due
> Wells Fargo Bank, N.A. d/b/a America's Servicing Company
> commencing December 1, 2008 is $3,253.43 plus 1/12 forced
> place wind insurance escrow or 1/12 wind insurance escrow
> for a policy obtained by Debtor and forwarded to Wells
> Fargo Bank, N.A. d/b/a America's Servicing Company.  This
> amount consists of $2,283.79 principal and interest as of
> December, 2008, $899.39 for 1/12th tax escrow, $70.25 for
> 1/12th hazard insurance escrow, plus wind insurance . . .

---

[37]See ASC's Brief, Docket Entry No. 14, pp. 10-11; Trustee's
Brief, Docket Entry No. 13, p. 6.

[38]Docket Entry No. 20 in Adversary Proceeding No. 08-03068,
pp. 2-3.

> Regular monthly payments shall continue at this amount
> until otherwise adjusted . . .[39]

Because the Agreed Final Judgment provided that "the Trustee is authorized to immediately disburse all on-going mortgage payments accruing from the petition date" and that "[r]egular monthly payments shall continue at th[e stated] amount until otherwise adjusted," the dismissal of the bankruptcy case required the bankruptcy court to determine what, if any, amounts held by the trustee were "not yet due and owing to creditors pursuant to paragraph (3)." 11 U.S.C. § 1326(a)(2). Although Baker argues that § 1326(a)(3) does not require that a home mortgage lender be fully paid before payments are made to counsel for the debtor, none of the arguments in Baker's brief address the effect of the orders contained in the Agreed Final Judgment entered in the Adversary Proceeding.

The Bankruptcy Court characterized the debtor's post-petition, pre-confirmation mortgage payments as adequate protection payments under 11 U.S.C. §§ 1303, 363(e), and 361, and not plan payments under 11 U.S.C. § 1326(a)(1)(A). In re Fernandez, 441 B.R. at 94-95. Citing In re Imyamah, 378 B.R. 183, 185 (Bankr. S.D. Ohio 2007), In re Sexton, 397 B.R. 375, 378 (Bankr. M.D. Tenn. 2008), and Hampton v. Capital One Auto. Fin. (In re Hampton), 383 B.R. 560, 562-63 (Bankr. S.D. Ga. 2008), as courts that have concluded that payments referenced in § 1326(a)(3) are synonymous with

---

[39]Id. at 2.

adequate protection payments, the Bankruptcy Court cited Bankruptcy
Local Rule 4001(e)(2) as evidence that the Southern District of
Texas has also adopted this interpretation.  In re Fernandez, 441
B.R. at 94.  Thus, the Bankruptcy Court concluded that

> upon dismissal of a Chapter 13 case in which no plan is
> confirmed, funds held by the trustee will be distributed
> first to recipients of unsatisfied adequate protection
> payments, then to administrative claimants, and finally
> to the debtor.   Accordingly, because the Debtor's
> Chapter 13 case was dismissed prior to confirmation,
> Baker, as an administrative claimant, is not entitled to
> payment of his attorney's fees until the Trustee has
> satisfied all unpaid adequate protection claims.

Id. at 94-95.  Baker argues that the Bankruptcy Court's conclusion
was erroneous because:  (1) the cases on which the Bankruptcy Court
relied do not support the Bankruptcy Court's conclusion; and
(2) the calculation of adequate protection payments for home loans
as an amount equal to the full amount of the contractual monthly
payment due to the mortgagee is incorrect.

Baker first argues that the cases cited by the Bankruptcy
Court do not support the Bankruptcy Court's determination that
"Section 1326(a)(2) requires that adequate protection payments on
home mortgages must be paid to the home mortgage lender for all
amounts that come due during the chapter 13 case."[40]   But the
Bankruptcy Court did not cite these cases for that determination.
The Bankruptcy Court correctly cited these cases in support of its
determination that adequate protection payments are synonymous with
payments referenced in § 1326(a)(3).  See In re Imyamah, 378 B.R.

---

[40]Appellant's Brief, Docket Entry No. 12, p. 18.

at 185 (the plain and unambiguous language of section 1326(a)(2) specifically governs the disposition of chapter 13 plan payments, and that it clearly provides that the funds, minus adequate protection payments and administrative claims, should be returned to debtors); <u>In re Sexton</u>, 397 B.R. at 378 (adopting the reasoning of <u>In re Imyamah</u>); <u>In re Hampton</u>, 383 B.R. at 562 ("The BAPCPA amendments added the language 'payments not previously paid and not yet due and owing to creditors pursuant to paragraph (3).' A leading bankruptcy treatise interprets the new provision as requiring the Trustee, if an order has been entered, to deduct any unpaid adequate protection payments that are due and owing to creditors under § 1326(a)(3) before refunding the remaining sums to the debtor.").

Citing <u>United Savings Association of Texas v. Timbers of Inwood Forest Associates, LTD.</u>, 108 S.Ct. 626 (1988), Baker argues that "the calculation of adequate protection payments for home loans as an amount equal to the full amount of the contractual monthly payment due to the mortgagee is incorrect."[41]   Baker explains that in <u>Timbers</u>

> the Supreme Court pointed out that if the property in the
> case had been declining in value, the petitioner would
> have been entitled to cash payments or additional
> security in the amount of the decline under section
> 361(d)(1). The U.S. Supreme Court in *Timbers* stated that
> "the relief pending the stay need only be such 'as will
> result in the realization . . . of the indubitable
> equivalent'" of the collateral. The U.S. Supreme Court
> went on to state that the realization does not result at

---

[41]<u>Id.</u> at 10.

once, *but upon completion of the reorganization . . .*
Given this interpretation, the post-dismissal adequate
protection payments due ASC should not have been
calculated using the ongoing mortgage payments.[42]

As additional evidence for rejecting the Bankruptcy Court's
calculation of adequate protection payments for home loans as an
amount equal to the full amount of the contractual monthly payment
due to the mortgagee, Baker cites the standard practice that sets
the amount of adequate protection payments for vehicles at an
amount equal to 1.5% of the value of the vehicle as of the petition
date.[43]

Timbers is distinguishable because (1) it was a Chapter 11 not
a Chapter 13 bankruptcy, (2) the collateral at issue was an
apartment project, not the debtor's homestead, and (3) the anti-
modification provision that protects home mortgage lenders
contained in 11 U.S.C. § 1322(b)(2) was not at issue.  Baker's
reliance on the standard practice that sets the amount of adequate
protection payments for vehicles at 1.5% of the value of the
vehicle as of the petition date is similarly distinguishable
because the Bankruptcy Code does not contain an anti-modification
provision that protects vehicle lenders.  Because Baker neither
acknowledges the anti-modification provision that protects home
mortgage lenders contained in 11 U.S.C. § 1322(b)(2), nor accounts
for the impact that the terms of the Agreed Final Judgment had on

--------

[42]Id. at 12.

[43]Id. at 11.

the Bankruptcy Court's reasoning, the court is not persuaded that the Bankruptcy Court incorrectly concluded that the adequate protection payment for the debtor's home loan was an amount equal to the full amount of the contractual monthly payment.

As the district court explained in Perez, 373 B.R. at 488, "[t]he critical aspect of the payments at issue is not whether they are 'under the plan' or 'adequate protection' payments, but rather that they are simply conduit payments." "Given the clear and explicit command of section 1322(b) to preserve the rights of holders of mortgage loans on the debtor's principal residence," id., the Agreed Final Judgment reasonably allowed the trustee to distribute post-petition, pre-confirmation mortgage payments received from the debtor. "Given the ambiguous interplay of sections 1326(a)(1) and (2)," id., and the Agreed Final Judgment's order that "[r]egular monthly payments shall continue at th[e stated] amount until otherwise adjusted," the court concludes that 11 U.S.C. § 1326(a)(2) required the trustee to satisfy all contractual mortgage payments due to ASC before paying any of Baker's approved attorney's fees.

**C.  ASC Was Owed More Than It Received and, Thus, Was Not Required to Return Any of the Post-Dismissal Payment It Received**

The dismissal of the bankruptcy case required the Bankruptcy Court to determine what, if any, amounts held by the trustee were "not yet due and owing to creditors pursuant to paragraph (3)." 11 U.S.C. § 1326(a)(2). Baker complains of the Bankruptcy Court's

-24-

conclusion that "ASC was actually owed more adequate protection than it received from the Trustee and, thus, is not required to return the $19,061.70 post-dismissal payment that it received from the Trustee,"[44] but he has not identified any facts or law that would support an alternative conclusion apart from the argument that the court has already concluded is not persuasive, *i.e.*, the argument that the Bankruptcy Court incorrectly equated the adequate protection payments due to ASC to the contractual monthly mortgage payments due to ASC.  The Bankruptcy Court explained that

> [t]hese payments were due according [to] the dates set forth in the terms of the Adjustable Rate Note, commencing the month following the filing of the Debtor's petition (September 2007) [Finding of Fact No. 1] through the Dismissal Date (October 22, 2009) [Finding of Fact No. 4].  The amount of contractual mortgage payments due to ASC during this time period is derived from three sources: (1) the principal and interest owing under the terms of the Adjustable Rate Note from September 2007 through November 2008; (2) the adjustment provided for in the Agreed Judgment from the time the judgment was entered in December 2008 through May 2009; and (3) the final adjustment outlined in the Trustee's Notice of Intent to Disburse Adjusted Mortgage from its implementation date in June 2009 through the dismissal of the case in October 2009.  [*See* Finding of Fact Nos. 6 & 16].

> Computing the monthly payment due to ASC during each of these periods, ASC is entitled to $70,797.18 in adequate protection payments from the Debtor, payable through the Chapter 13 Trustee.  As discussed above, ASC received monthly disbursements prior to dismissal of this case totaling $48,800.00 and an additional post-dismissal payment of $19,061.70, for a total amount of $65,861.70. [Finding of Fact No. 9].  Thus, ASC has actually been underpaid a total of $4,935.48, but has chosen to not seek additional payment from the Chapter 13 Trustee.

---

[44]*Id.* (citing In re Fernandez, 441 B.R. at 101).

> Accordingly, the Court finds that ASC is entitled to retain the full $19,061.70 disbursement it received from the Trustee following the dismissal of this Chapter 13 case . . .

In re Fernandez, 441 B.R. at 97.  Because this court has no basis on which to reject the Bankruptcy Court's calculations, the court concludes that ASC was owed more than it received and, thus, was not required to return any of the post-dismissal payment it received.

## IV.  Conclusions and Order

For the reasons stated above, the Bankruptcy Court's October 6, 2010, Memorandum Opinion and Order denying Baker's Emergency Motion to Compel Chapter 13 Trustee to Pay Approved Fees to Baker & Associates and to Revoke Payment to Home Mortgage Lender are **AFFIRMED**.

**SIGNED** at Houston, Texas, on this 13th day of April, 2011.

_____
                    SIM LAKE
UNITED STATES DISTRICT JUDGE